IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

WILLIAM H. DURHAM                                        PLAINTIFF

v.                              CIVIL ACTION NO. 2:20-CV-112-KS-MTP

ANKURA CONSULTING GROUP, LLC                            DEFENDANT

### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants in part and denies in part** Defendant's Motion to Dismiss [15]. The Court grants the motion as to Plaintiff's claims of negligence and gross negligence, but the Court denies it in all other respects.

### I. BACKGROUND

Plaintiff is a doctor who provides services to attorneys and law firms involved in asbestos litigation. Specifically, he reads chest x-rays of people allegedly exposed to asbestos in support of claims submitted to settlement trusts. Plaintiff alleges that the settlement trust administrators noticed the high volume of x-rays he reviewed and hired Defendant to conduct an audit of his readings. He contends that Defendant intentionally designed the audit so that he would fail it, by "cherry-picking" x-rays with low opacity, which indicates fewer asbestos particles. According to Plaintiff, Defendant wanted him to fail the audit because that would allow the trust administrators to deny more claims.

After Plaintiff failed the audit, the trust administrators declined to accept any more reports from him, and they sent a letter stating as much to several law firms in

Mississippi that had retained Plaintiff's services. The trusts also refused to pay on certain claims. As a result, Plaintiff's clients did not pay for his services on certain claims, and they have not hired him again.

Plaintiff filed this lawsuit against Defendant, asserting claims of negligence and tortious interference with contract. He demands past losses of $2,215,630.00, future losses of $12,000,000.00, and punitive damges. Defendant filed a Motion to Dismiss [15], which the Court now addresses.

## II. DISCUSSION

### A.   *Personal Jurisdiction*

First, Defendant argues that the Court does not have personal jurisdiction over it in this case. "A federal court siting in diversity may exercise personal jurisdiction only to the extent permitted [in] a state court under state law." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citations omitted). "The court may only exercise jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution." *Id.*

"When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident . . . . A plaintiff satisfies this burden by presenting a prima facie case for personal jurisdiction." *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012) (citations omitted). "The district court is not

2

obligated to consult only the assertions in the plaintiff's complaint . . . . Rather, the district court may consider the contents of the record at the time of the motion, including affidavits." *Paz*, 445 F.3d at 812 (citations omitted). But "uncontroverted allegations in the plaintiff's complaint must be accepted as true, and all disputed facts must be construed in the plaintiff's favor." *Blacklidge Emulsions, Inc. v. Blankenship*, 2013 WL 6492876, at *1 (S.D. Miss. Dec. 10, 2013) (citations omitted).

    *1.*    *Long-Arm Statute*

"Mississippi's long-arm statute provides the courts shall have jurisdiction over a nonresident who: (1) makes a contract with a resident of this state to be performed in whole or in part by any party in this state, (2) commits a tort in whole or in part in this state against a resident or nonresident, or (3) does any business or performs any character of work or service in this state." *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 720 (S.D. Miss. 2014). Plaintiff argues that jurisdiction over Defendant is appropriate under the doing-business and tort prongs.

    **a.**    **Doing-Business Prong**

The doing-business prong applies to "[a]ny nonresident . . . who shall do any business or perform any character of work or service in this state if the action or proceeding accrues from acts done in this state." *Adara Networks, Inc. v. Langston*, 301 So. 3d 618, 624 (Miss. 2020) (quoting *C. H. Leavell & Co. v. Doster*, 211 So. 2d 813, 815 (Miss. 1968)). A nonresident defendant may be "doing business" in Mississippi if "he did various acts here for the purpose of realizing a pecuniary benefit

or otherwise accomplishing an object." *Retail Coach v. r360, LLC*, 2017 WL 875831, at *3 (N.D. Miss. Mar. 3, 2017) (quoting *McDaniel v. Ritter*, 556 So. 2d 303, 309 (Miss. 1989)).

Defendant argues that jurisdiction is improper under the doing-business prong because Plaintiff has not identified any actions by it in Mississippi, other than requests for information from Mississippi residents for an audit conducted in Washington, D.C. Defendant presented a declaration from its Senior Managing Director, Gary Wingo, in which he declares that 1) Defendant does not have any members in Mississippi, 2) its principal place of business is in New York, 3) it has no offices or employees in Mississippi, and 4) it has not been authorized to do business in Mississippi. Exhibit 1 to Motion to Dismiss at 1, *Durham v. Ankura Consulting Group, LLC*, No. 2:20-CV-112-KS-MTP (S.D. Miss. Aug. 10, 2020), ECF No. 15-1. Wingo claims that Defendant "is a professional services consulting firm that provides (among other things) administrative services to various settlement funds, including certain trusts, and that "[n]one of the Trusts were formed under Mississippi law and none of them are located in Mississippi." *Id.*

Plaintiff alleged – and Defendant has not denied – that Defendant contacted Mississippi law firms to obtain copies of x-ray films for its audits. Amended Complaint at 5, *Durham v. Ankura Consulting Group, LLC*, No. 2:20-CV-112-KS-MTP (S.D. Miss. July 27, 2020), ECF No. 12. According to Plaintiff, Defendant then mailed correspondence, a software program, and the copies of the x-rays back to the

Mississippi law firms, with instructions to provide them to Plaintiff, who was to send them back to Defendant with certain responses or mark-ups. *Id.* Plaintiff alleges that Defendant conducted these activities while knowing 1) that Plaintiff was a Mississippi resident, 2) that some of the claimants were Mississippi residents, 3) that the x-rays were stored in Mississippi, and 4) that the law firms it was communicating with were in Mississippi. *Id.* at 6.

Plaintiff essentially argues that Defendant conducted business in Mississippi because, as part of the audit it was hired to conduct by the asbestos trusts, it corresponded with persons in Mississippi and obtained medical records of persons who live in Mississippi, all with the knowledge that its activities affected persons in Mississippi, including Plaintiff. In other words, Plaintiff contends that Defendant directed its audit activities at Mississippi. The Court agrees, and finds that Defendant's contacts are sufficient to establish jurisdiction under the doing-business prong of the long-arm statute. *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 495 (5th Cir. 2012) (defendant was amenable to suit under doing-business prong where only contact with Mississippi was an exchange of possession of goods from plaintiffs' shipper to defendants' shipper in Gulfport).

### b.    Tort Prong

"Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997). This Court

has previously addressed the long-arm statute's application to a tortious interference claim. Several district judges in this state have held that when the plaintiff's principal place of business or residence is in Mississippi, the alleged injury necessarily occurred here. *See, e.g. Chain Elec. Co. v. Joubert*, 2016 WL 1020861, at *2 (S.D. Miss. Mar. 14, 2016) (citing numerous cases). Plaintiff, a Mississippi resident, alleges that Defendant's actions caused him to suffer damages in the form of lost business in Mississippi. Plaintiff further alleged that Defendant knew Plaintiff was a Mississippi resident, and that he contracted with Mississippi attorneys. These allegations are sufficient to demonstrate that an element of tortious interference occurred in Mississippi, and that jurisdiction is appropriate under the tort prong of the long-arm statute.

Defendant contends that Plaintiff was not injured in Mississippi. It argues that Plaintiff merely experienced "consequences stemming from the actual tort injury," and that such consequences are not enough to "confer personal jurisdiction at the site or sites where such consequences happen to occur." *Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011). Defendant argues that, by Plaintiff's own allegations, the tort occurred outside Mississippi, where Defendant conducted its audit. Setting aside the issue of Defendant's alleged actions directed at Mississippi, such as correspondence with Mississippi law firms, the "long-arm statute contains no requirement that the part of the tort which causes the injury be committed in Mississippi." *Id.* (quoting *Horne v. Mobile Area Water & Sewer Sys.*, 897 So. 2d 972, 977 (Miss. 2004)).

6

Here, Plaintiff's actual injury, not its mere consequences, occurred in Mississippi. Defendant directed numerous actions, as part of its audit and the resulting fallout from the audit, to Mississippi. Mississippi law firms ceased retaining Plaintiff's services. Plaintiff's economic losses occurred here. For these reasons, the Court concludes that the tort prong of the long-arm statute applies.

2.    *Due Process Clause*

The Fourteenth Amendment's Due Process Clause "permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Unified Brands*, 868 F. Supp. 2d at 577. "Minimum contacts . . . can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Id.*

Plaintiff contends that the Court has specific jurisdiction over Defendant. "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). The Court "applies a three-step analysis to determine specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's

forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Jackson v. Tanfoglio Guiseppe S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010).

The Court's inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). "[T]he relationship must arise out of contacts that the defendant himself creates with the forum State." *Id.* In other words, the Court must determine whether the nonresident defendant directed specific acts toward the forum state. *McFadin v. Gerber*, 587 F.3d 753, 762 (5th 2009); *Bustos v. Lennon*, 538 F. App'x 565, 568 (5th Cir. 2013). "[E]ven an act done outside the [forum] state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *McFadin*, 587 F.3d at 761. However, "[m]erely causing harm to a resident of the state is not sufficient." *Bustos*, 538 F. App'x at 568. Likewise, "foreseeable injury in the state is not enough absent the direction of specific acts toward the forum." *Id.*

Here, Plaintiff alleges that Defendant agreed to audit him, intentionally directing its auditing activities toward Mississippi, while knowing that Plaintiff is a Mississippi resident and that the audit would harm him. In other words, Plaintiff alleged "act[s] done outside the [forum] state" with intended "consequences or effects within the state." *McFadin*, 587 F.3d at 761. Defendant is "not charged with mere

untargeted negligence," but, rather, "intentional . . . tortious actions . . . knowingly initiated and aimed at" a Mississippi resident. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999). Under these circumstances, Defendant "must reasonably anticipate being haled into court" in Mississippi. *Id.* Therefore, the Court concludes that Defendant has minimum contacts with Mississippi, and that the present action arises from those contacts.

"The specific jurisdiction inquiry next asks whether jurisdiction would comport with fair play and substantial justice," *Taishan-Gypsum Co. v. Gross*, 753 F.3d 521, 544 (5th Cir. 2014), or "whether the exercise of personal jurisdiction is fair and reasonable." *Jackson*, 615 F.3d at 585. "[T]he burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). The Court considers five factors: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Taishan-Gypsum*, 753 F.3d at 544.

Defendant made no attempt in briefing to demonstrate that the Court's exercise of personal jurisdiction here would be unfair or unreasonable. Rather, its argument focused solely on the minimum contacts analysis. Therefore, the Court concludes that Defendant failed to carry its burden in the third prong of the specific jurisdiction analysis.

For all these reasons, the Court concludes that it has personal jurisdiction over Defendant in the present case.

**B.      *Subject Matter Jurisdiction***

Next, Defendant argues that the Court lacks subject matter jurisdiction over this case because Plaintiff lacks standing. "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' or 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). The case-or-controversy requirement reflects the separation of powers principle, which is central to the foundation of the federal government, and limits federal power via several doctrines, such as standing, mootness, and ripeness. *Id.* In general terms, Article III standing requires that a plaintiff "allege an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable ruling." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir. 2011). The party invoking federal jurisdiction must demonstrate that he has standing to sue at the time the complaint is filed. *Pluet v. Frazier*, 355 F.3d 381, 385 (5th Cir. 2004).

Article III standing implicates subject matter jurisdiction and should be examined under Rule 12(b)(1). *Harold H. Huggins*, 634 F.3d at 795 n. 2. When addressing a motion under Rule 12(b)(1), the Court generally may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

10

The Court may also generally rely on documents of public record or documents attached to the complaint. *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 189 n. 5 (5th Cir. 1986). The party asserting jurisdiction has the burden of proof. *Wolcott*, 635 F.3d at 762.

However, "[w]hen standing is challenged on the basis of the pleadings, [the Court] must accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Massachusetts v. EPA*, 549 U.S. 497, 518, 127 S. Ct. 1438, 167 L. Ed. 2d 248 (2007). But "standing cannot be inferred argumentatively from averments in the pleadings, but rather . . . it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) (internal citations and punctuation omitted). Application of these requirements is not a "mechanical exercise." *Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S. Ct. 849, 99 L. Ed. 2d 1 (1988).

Defendant argues that Plaintiff has not alleged that he suffered or will suffer an actual, concrete injury. Specifically, Defendant contends that Plaintiff has not

11

alleged that he was entitled to any payment from Defendant, but, rather, he alleged that certain law firms refused to pay him after Defendant returned an unfavorable decision on the audit. Defendant argues that a possible loss of fees from hypothetical future claims is not certain enough to establish standing, citing *Mandelbrot v. Armstrong World Indus. Asbestos Personal Injury Settlement Trust*, 618 F. App'x 57 (3rd Cir. 2015).

*Mandelbrot* is not applicable here. In that case, the Third Circuit held that an attorney who represented asbestos claimants could not sue settlement trusts for their alleged refusal to accept claims from his law firm. *Id.* at 58. The Court noted that "[o]nly claimants themselves, not the claimants' representatives, have standing to assert legally cognizable claims against a trust." *Id.* Here, Defendant is not a trust, and Plaintiff is not suing it for breach of trust.

Defendant cites *Mandelbrot* for the general principle that the loss of potential fees is not certain enough to create an injury-in-fact. *Id.* at 59. However, *Diamond v. Charles*, 476 U.S. 54, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986), cited by the Third Circuit, provided that a fee award in a case challenging the constitutionality of a state law was not enough to grant an intervenor standing because the fee award had no "nexus to the substantive character of the statute or regulation at issue." *Id.* at 70. In other words, the fee award at issue there was not "fairly traceable" to the allegedly unconstitutional statute and, therefore, not "likely to be redressed by a favorable ruling." *FNC*, 634 F.3d at 795 n. 2.

12

Here, Plaintiff asserted a claim of tortious interference with contract, claiming that Defendant intentionally interfered with his business relationship with certain law firms by creating an audit that he was sure to fail, and then sending correspondence to his business associates advising them that he had failed the audit. The loss of both past and future fees that he alleges is fairly traceable to Defendants' alleged tortious conduct, and allegations of economic injury are sufficient for purposes of establishing the injury-in-fact element of standing. *Clinton v. City of New York*, 524 U.S. 417, 432, 118 S. Ct. 2091, 141 L. Ed. 2d 393 (1998); *Cole v. GMC*, 484 F.3d 717, 723 (5th Cir. 2007). As this Court has noted in a prior opinion, "while it is clear that a future injury may, in some circumstances, be sufficiently certain or imminent to satisfy Article III's standing requirements, it is likewise clear that there is an outer limit as to how far a plaintiff may reach." *Bryant v. Holder*, 2011 WL 710693, at *10 (S.D. Miss. Feb. 3, 2011). But it is unlikely that there is a fixed time limit, given the fluid nature of the standing analysis. *Id.* (citing *Pennell*, 485 U.S. at 7).

Construing Plaintiff's allegations in the light most favorable to Plaintiff, *Ass'n of Am. Physicians & Surgeons*, 627 F.3d at 550, the Court concludes that his alleged future loss of fees is sufficiently concrete and imminent to confer standing.

## C.   *Failure to State a Claim*

Next, Defendant argues that Defendant's Amended Complaint should be dismissed for failure to state a claim for which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual

13

matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

"The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763 (5th Cir. 2019). The Court may also consider matters of public record, *Davis v. Bayless*, 70 F.3d 367, n. 3 (5th Cir. 1995), and any other matters of which it may take judicial notice. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable

14

opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). However, the "district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2008).

Both parties presented materials outside the pleadings. The Court declines to consider them when addressing Defendant's 12(b)(6) arguments.

### 1.   Negligence

Defendant argues that Plaintiff failed to state a claim of negligence because Plaintiff has not alleged that, as a third-party to Defendant's contract with the trusts, he detrimentally relied on Defendant's audit. Anyone "providing expert or specialized services to the public" is "held to a duty of reasonable care . . . ." *Hosford v. McKissack*, 589 So. 2d 108, 110 (Miss. 1991). Privity of contract is not required. *Id.* (citing Miss. Code Ann. § 11-7-20). A person offering services to the public may be liable in tort to third parties with whom it did not contract to provide said services, under certain circumstances. *Id.* at 110-11. The question is one of "foreseeability and detrimental reliance." *Id.* at 110. An auditor may be liable to any third parties it "may reasonably be expected to supply with information," who then rely on the information to their detriment. *Id.* at 111.

Plaintiff did not allege any facts indicating that he detrimentally relied on Defendant's audit. In fact, he did not even make a conclusory allegation of detrimental reliance. Rather, he plainly disagreed with Defendant's findings.

15

Therefore, the Court finds that Plaintiff has failed to allege sufficient facts to state a claim of negligence against Defendant. *See Arnona v. Smith*, 749 So. 2d 63, 66 (Miss. 1999) (where home owners did not detrimentally rely on title opinion by attorney retained by buyer, their negligence claim failed).

  2. *Tortious Interference*

  Defendant argues that Plaintiff failed to state a claim of tortious interference because he did not allege the existence of an enforceable contract between himself and any law firms.

  "An action for tortious interference with contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party." *Hollywood Cemetery Ass'n v. Bd. of Mayor and Selectmen of City of McComb*, 760 So. 2d 715, 719 (Miss. 2000). A plaintiff asserting this cause of action must prove the following elements:

  (1) that the acts were intentional and willful;

  (2) that they were calculated to cause damage to the plaintiffs in their lawful business;

  (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and

  (4) that actual damage and loss resulted.

*McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001). Additionally, "[t]he plaintiff must prove that an enforceable obligation existed between the plaintiff and another party," and "that the contract would have been performed but for the

16

alleged interference." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998).

In the Amended Complaint, Plaintiff alleged that he "regularly entered into valid verbal contracts with attorneys and law firms" to read x-rays for asbestos claims in exchange for payment. Amended Complaint [12], at 13. Plaintiff further alleged that he had "valid existing verbal contracts" with such attorneys, until Defendant sent correspondence to them, intentionally interfering with said contracts. *Id.* Plaintiff named specific attorneys, *id.* at 11, 13, and he attached an affidavit from one of them. Exhibit 3 to Amended Complaint, *Durham v. Ankura Consulting Group, LLC*, No. 2:20-CV-112-KS-MTP (S.D. Miss. July 27, 2020), ECF No. 12-3. The attorney, Gene Hortman, declared that his firm "had an oral agreement with [Plaintiff] . . . for him to read and interpret chest x-rays of potential asbestos clients . . . ." *Id.* at 1. Hortman said that his firm was "still involved in representing asbestos clients and [it] had planned on continuing to use [Plaintiff] to perform x-ray reports and other asbestos claims related professional services for years to come." *Id.* Hortman also said that when his firm received the correspondence notifying them that the trusts would no longer accept x-ray reports from Plaintiff, the firm owed Plaintiff $49,720.00." *Id.* at 2. "Because of the notice . . . [the] firm did not pay [Plaintiff] the $49,720 owed to him for the B-reads he had done . . . ." *Id.*

In the Court's opinion, these factual allegations are sufficient to state a claim for tortious interference with contract. Plaintiff included both general and specific

factual allegations that he had verbal contracts with law firms for provision of x-ray reports, and that the audit report caused the law firms to not perform their end of the contract. He included specific allegations regarding fees owed to him by one law firm. The Court renders no opinion as to the extent of damages that Plaintiff can prove with sufficient certainty, but this is only the pleading stage.

Defendant also argues that its alleged interference was privileged and, therefore, not actionable. Defendant contends that its actions were privileged because it had a contractual right to perform the audit. For a viable claim of intentional interference, "the interference complained of must be wrongful." *Gulf Coast Hospice, LLC v. LHC Group, Inc.*, 273 So. 3d 721, 746 (Miss. 2019). "Even if a party interferes with the . . . execution of a contract, if he has a legitimate interest therein or a contractual right to perform said act it is privileged and thus not wrongful and actionable." *Id.*

The tortious interference of which Plaintiff complains is not the performance of an audit. Rather, Plaintiff contends that Defendant intentionally performed a dishonest audit with the purpose of failing him. Specifically, Plaintiff alleges that Defendant intentionally selected x-rays that could be read in different manners, intentionally ignoring the industry's recognition of variability in certain scan results. Defendant does not argue – or present any authority demonstrating – that it had a legitimate interest or contractual right to conduct an intentionally slanted, dishonest audit, which is what Plaintiff alleges. Therefore, the Court rejects Defendant's

privilege argument.

## D.     *Transfer*

Finally, Defendant argues that this case should be transferred to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a). District courts "have broad discretion in deciding whether to order a transfer" pursuant to § 1404(a). *In re Volkswagen of Am.*, 545 F.3d 304, 311 (5th Cir. 2008). The statute provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The first question under Section 1404(a) is whether the case "might have been brought in the destination venue." *In re Volkswagen of Am.*, 545 F.3d at 312. A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1392(b). The Court will assume, for the purpose of addressing the present motion, that Defendant had demonstrated that this case could have been brought in the District of Columbia.

19

Next, a party seeking a transfer under § 1404(a) must demonstrate "good cause" for a transfer. *In re Volkswagen of Am.*, 545 F.3d at 315. Good cause has been defined as follows:

> When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice. Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.

*Id.* To determine whether the transferee venue is clearly more convenient than the present venue, the Court considers various factors impacting the private and public interests in the case. *Id.*

> The private interest factors are: (1) the relative ease of access to the sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* While these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and none of them carry "dispositive weight." *Id.* Section 1404(a) "requires an individualized, case-by-case consideration of convenience and fairness." *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014).

Defendant argues that the public interest factors are irrelevant because there

20

is no localized interest in keeping the case here. It also argues that the private factors "overwhelmingly" support transferring the case to D.C. because its audit team is based there, and all the records, witnesses, and other sources of proof related to its actions are there.

As for the private-interest factors, the Court is not convinced that they "overwhelmingly" support a transfer, as Defendant argues. Defendant conveniently ignored substantial evidence here in Mississippi. The law firms with which Defendant corresponded are here. Plaintiff's past and future law firm clients are here. Plaintiff is here. All of these sources of evidence go toward both Plaintiff's damages and the question of causation. Therefore, the Court concludes that the private-interest factors do not demonstrate that either Mississippi or D.C. is clearly more convenient than the other. Either way, someone will have to contend with the geographical distance.

As for the public-interest factors, court congestion is not an issue. In fact, the undersigned senior judge recently transferred half his case load to new judges. Mississippi has a local interest in this matter because Plaintiff is a Mississippi citizen. In contrast, Defendant is not citizen of D.C. Finally, the Court assumes that it has greater familiarity with Mississippi law than a D.C. court, and Defendant has not represented that there will be any conflict-of-law issues.

For all these reasons, the Court concludes that Defendant has not demonstrated good cause for a transfer.

### III. CONCLUSION

For these reasons, the Court **grants in part and denies in part** Defendant's Motion to Dismiss [15]. The Court grants the motion as to Plaintiff's claims of negligence and gross negligence, but the Court denies it in all other respects.

SO ORDERED AND ADJUDGED this 11th day of January, 2021.

_/s/      Keith Starrett_

KEITH STARRETT
UNITED STATES DISTRICT JUDGE
